■ Alexander Kayser, an Infant, by Beth Kayser et al., His Parents, et al., Appellants, v Fouad A. Sattar et al., Respondents. [870 NYS2d 537]—

Stein, J.

In April 1999, plaintiff Beth Kayser (hereinafter the mother) consulted with and utilized the services of defendants Fouad A. Sattar and William Anyaegbunam, obstetricians, and defendant

Caren Crootof, a nurse midwife, because she was pregnant with her third child, plaintiff Alexander Kayser (hereinafter the infant). In mid-April, the mother went into labor and went to defendant St. Clare's Hospital where Crootof assisted her during the labor process. Upon presentation of the child's head, Crootof determined that shoulder dystocia had occurred and she requested the assistance of Sattar, who arrived after the infant was delivered by Crootof and defendant Daniel Hubicki (a resident employed by the hospital) using traction, the McRobert's maneuver and an episiotomy.

Plaintiffs commenced this action alleging that, as a result of defendants' negligence, the infant sustained, among other things, a brachial plexus injury which resulted from the shoulder dystocia. During the trial, plaintiffs' cause of action based on lack of informed consent was dismissed. After deliberating, the jury returned a verdict in favor of defendants. Plaintiffs moved pursuant to CPLR 4404 seeking, among other things, a judgment notwithstanding the verdict, an order setting aside the verdict on the ground that the verdict was against the weight of the evidence, or an order directing a new trial. Supreme Court denied plaintiffs' motion, prompting this appeal.

Initially, we note that plaintiffs failed to preserve any claim that the motion to dismiss the informed consent cause of action was premature. Furthermore, in light of the testimony of plaintiffs' expert conceding that shoulder dystocia is an emergency situation, Supreme Court properly dismissed the cause of action based on lack of informed consent (*see* Public Health Law § 2805-d; *Connelly v Warner*, 248 AD2d 941, 942 [1998]).

We also note that, in failing to move for a directed verdict at the close of proof, "plaintiffs [implicitly] conceded that the question [of negligence] was one for the jury and could not be decided as a matter of law" (*Johnson v First Student, Inc.*, 54 AD3d 492, 494 [2008]; *see Miller v Miller* 68 NY2d 871, 873 [1986]; *City of Plattsburgh v Borner*, 38 AD3d 1047, 1048 [2007]). As such, we turn to plaintiffs' contention that Supreme Court erred in denying the motion to set aside the verdict as contrary to the weight of the evidence with respect to Crootof's use of downward traction, Hubicki's use of fundal pressure, and the issue of whether Sattar's and Anyaegbunam's supervision of Crootof was negligent.

With regard to the issue of Hubicki's negligence, we also conclude that plaintiffs' assertions lack merit. Hubicki, Crootof and two delivery room nurses testified that Hubicki did not apply fundal pressure. Viewing the evidence in the light most favorable to defendants as the nonmoving parties (*see Martin v*

*Clark,* 47 AD3d 981, 983 [2008]) and according great deference to the jury's verdict, even if the evidence could support a contrary verdict (*see Warnke v Warner-Lambert Co.,* 21 AD3d 654, 657 [2005]; *Monahan v Devaul,* 271 AD2d 895, 895-896 [2000]), we find that the credible evidence supports the jury's determination that Hubicki was not negligent. Therefore, Supreme Court properly declined to disturb the verdict in this regard. However, as set forth below, because we find that the jury was prevented from fairly considering the issue of downward traction, a new trial on the remaining issues is warranted.

We agree with plaintiffs' assertion that Supreme Court erred when it refused to grant the jury's request for clarification of verdict question number 11, which asked, "Did defendant, Caren Crootof, depart from the accepted standard of care by application of traction to the baby's head on April 14, 1999?" After almost two full days of deliberations, the jury submitted the following inquiry to the court: "What is meant by 'departure from accepted standard of care by *application* of traction to the baby's head?' What do you mean by application? Does it mean if application was applied? *or* Does it mean how/the way application was applied?" Supreme Court's instruction in response to the jury's inquiry essentially left it up to the jurors to decide for themselves what the question meant.

Since plaintiffs did not raise any objection to question 11 or request a separate interrogatory to elicit whether the manner in which the traction was applied was improper—as opposed to whether any use of traction was negligent—either prior to the submission of the verdict sheet to the jury or prior to the jury retiring for deliberations, any challenge to the wording of question 11 or to the omission of a question is arguably unpreserved* (*see* CPLR 4110-b, 4111 [b]; *Suria v Shiffman,* 67 NY2d 87, 97 [1986]; *Pagnotta v Diamond,* 51 AD3d 1099, 1100 [2008]; *Postlethwaite v United Health Servs. Hosps.,* 5 AD3d 892, 894 [2004]). "Nevertheless, this Court may order a new trial in its discretion upon an unpreserved error in a jury instruction when that error is fundamental. More particularly, a new trial is warranted where the error is so significant that the jury was prevented from fairly considering the issues at trial" (*Pagnotta*

---

* While it might be argued that plaintiffs preserved their objection to Supreme Court's instruction in response to the jury's inquiry, plaintiffs' proposed remedy to the jury's confusion would essentially have reformulated the verdict sheet initially presented, thus effectively allowing plaintiffs to make a challenge that was unpreserved. However, we note that even the original question proposed by plaintiffs did not distinguish between the two traction issues.

*v Diamond*, 51 AD3d at 1100 [internal quotation marks and citations omitted]).

Here, plaintiffs clearly presented two different theories of liability based on the use of traction. For example, there was expert testimony regarding viable alternatives to traction. In addition, several witnesses testified to the degree of force with which traction was applied. However, the verdict sheet could have led the jury to believe that, if it found that it was not negligent for Crootof to use traction under the circumstances, the jury could not find her negligent by virtue of the manner in which traction was applied. Furthermore, the general negligence and medical malpractice charges, themselves, did not delineate the task of the jury in this regard. Notably, there was evidence of jury confusion, as manifested by the jury's question to Supreme Court requesting clarification of question 11 (*cf. Pyptiuk v Kramer*, 295 AD2d 768, 771 [2002]; *Zito v New York State Elec. & Gas Corp.*, 122 AD2d 499, 501 [1986]). In fact, based on the record, it is evident that even the attorneys disagreed as to the meaning and intent of the question. Under these circumstances, even though plaintiffs failed to request two separate interrogatories on the issue of the application of traction, we find that the jury was prevented from fairly considering the issues presented and, therefore, that a new trial is warranted. Consequently, a new trial on the intertwined issue of negligent supervision is also required (*see generally Mignott v Sears, Roebuck & Co.*, 101 AD2d 731, 732 [1984], *appeal dismissed* 63 NY2d 675 [1984]).

Mercure, J.P. and Spain, J., concur.

Malone Jr., J. (dissenting). We respectfully dissent. When given the opportunity to object to question 11 on the proposed verdict sheet before jury deliberations, plaintiffs did not. While it can be argued that the question could have been worded differently, such is always the case when the trial court and trial attorneys discuss the wording of jury verdict sheet questions before the court makes its determination on that wording. To allow a party to obtain a second opportunity to change the wording after an unfavorable verdict, except in the most obvious and egregious cases where the error is fundamental (*see Pagnotta v Diamond*, 51 AD3d 1099, 1100 [2008]), would subject the prevailing party and the trial court to the expense and time of a retrial. Furthermore, the CPLR explicitly provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he [or she] objects thereto before the jury retires to consider its verdict stating the matter to which he [or she] objects and the grounds of his [or her] objection" (CPLR

4110-b; *see Postlethwaite v United Health Servs. Hosps.*, 5 AD3d 892, 894 [2004]).

In any event, question 11, which did prompt a jury note, was sufficiently clear. Supreme Court's response to the note, instructing the jury that it was to give plain meaning to the word "application" of traction, was not improper. Consequently, we would affirm the judgment in favor of defendants.

Carpinello, J., concurs. Ordered that the judgment is modified, on the facts, without costs, by reversing so much thereof as dismissed the causes of action based on negligent supervision and application of traction with respect to defendants Fouad A. Sattar, William Anyaegbunam and Caren Crootof; matter remitted to the Supreme Court for a new trial on said causes of action; and, as so modified, affirmed.